John TOMCZYSCYN and Josephine Tomczyscyn, Parents and Beneficiaries of Gregory Tomczyscyn, Deceased,

v.

TEAMSTERS, LOCAL 115 HEALTH & WELFARE FUND.

Civ. No. 85–0989.

United States District Court, E.D. Pennsylvania.

July 26, 1985.

Paul N. Sandler, Philadelphia, Pa., for plaintiffs.

Robert C. Cohen, Markowitz & Richman, Philadelphia, Pa., for defendant.

## OPINION

LUONGO, Chief Judge.

Plaintiffs John and Josephine Tomczyscyn have returned to this court following the denial of their request for $15,000.00 in life insurance benefits by the trustees of Teamsters, Local 115 Health and Welfare Fund ("Fund"). Plaintiffs allege that they are entitled to receive the death benefit as beneficiaries of their deceased son Gregory Tomczyscyn. On July 10, 1984, I granted the Fund's motion for summary judgment in plaintiffs' initial lawsuit on the ground that plaintiffs had failed to exhaust their

right to appeal to the Fund's trustees. Because the Fund had failed to notify plaintiffs of their appeal rights, however, I granted the motion without prejudice to plaintiffs' right to file a second action if exhaustion proved unsuccessful. *Tomczyscyn v. Teamsters, Local 115 Health and Welfare Fund,* 590 F.Supp. 211 (E.D.Pa. 1984). Presently before me is the Fund's motion for summary judgment on the merits of plaintiffs' claim. I conclude that the trustees' decision passes muster under the limited standard of review applicable in such cases. I must therefore grant the motion.

## I.

As more fully described in my earlier opinion, Gregory Tomczyscyn worked for Air Master Corporation from July, 1981 until August or September, 1981. Air Master was party to a collective bargaining agreement with Teamsters Union Local 115 pursuant to which an employee health and welfare benefit plan was established. One of the provisions of the benefit plan was a $15,000.00 death benefit for covered employees. There is no dispute that Gregory became eligible for the death benefit at some point during his employment with Air Master.

On August 25, 1981 Gregory suffered severe injuries in a work-related accident. Although he made one or two attempts to return to work in August or September, 1981, Gregory did not thereafter resume employment.

Gregory's separation from Air Master Corporation had a significant impact on his eligibility for benefits under the health and welfare plan. Because Gregory was disabled by his occupational accident, the plan maintained his eligibility for benefits for a period of twenty-six (26) weeks.[1] The plan also enabled Gregory to maintain his eligibility for the death benefit after twenty-six weeks of disability. To continue the death benefit in effect, Gregory was required to submit proof of his "total and permanent disability ... within the twelve month period of disability and yearly thereafter...."[2]

The parties dispute whether Gregory was "totally and permanently" disabled during the interval between his accident and his death. Relying on a determination of eligibility for disability benefits by the Social Security Administration, a waiver of premiums by Gregory's personal life insurance carrier, and Gregory's medical records, plaintiffs argue that Gregory's condition clearly precluded employment at any time after his accident. The Fund attempts to distinguish the decisions of the Social Security Administration and Gregory's insurance carrier on the ground that the plan requires proof of a disability that is total and permanent. The Fund also interprets Gregory's medical records as suggesting the possibility that Gregory could eventually return to work.

It is undisputed, however, that Gregory failed to establish his total and permanent disability with the Fund within one year of his accident. Nevertheless, as plaintiffs point out, the Fund accepted payments from Air Master Corporation on Gregory's behalf for the months of July through September, 1982, several months after his eligibility allegedly ceased. In addition, plaintiffs note that the Fund paid two claims, unrelated medical bills, submitted on behalf of Gregory in October, 1982.

## II.

After I granted the Fund's motion for summary judgment in plaintiffs' initial law-

---

1. The plan provided:
   *Eligibility for Disabled Employees*
     If you become disabled while you are eligible for benefits and such disability entitles you to weekly disability benefits, workmens compensation benefits, or benefits under any occupational disease act or unemployment security legislation, you will be credited with employer contributions for the purpose of continuing eligibility for benefits for the duration of the disability, but not longer than a period of twenty-six (26) weeks from the first days of the disability as determined by a doctor's certificate.
   Teamsters Union Local No. 115 Health and Welfare Plan at 7.

2. *Id.* at 11.

suit, plaintiffs exercised their right to appeal their claim to the Fund's trustees. Advancing essentially the information now before me, plaintiffs argued that Gregory was totally and permanently disabled from the time of his accident, and that sufficient notice of that fact had been given to the Fund. After a hearing at which plaintiffs, assisted by counsel, presented evidence in support of their claim, a subcommittee of the trustees recommended that the claim be denied. The trustees accepted this recommendation, finding that Gregory was not eligible for benefits because of his failure to submit proof of total and permanent disability within one year of the accident and because the medical records did not establish that Gregory met the plan's disability criteria.

### III.

■ In an action to overturn a denial of benefits by the trustees of an employee benefit plan, the plaintiff bears the burden of establishing that the trustees' decision was arbitrary and capricious. *Gaines v. Amalgamated Insurance Fund*, 753 F.2d 288 (3d Cir.1985); *Wolf v. National Shopmen Pension Fund*, 728 F.2d 182 (3d Cir. 1984); *Rosen v. Hotel and Restaurant Employees and Bartenders Union*, 637 F.2d 592 (3d Cir.), *cert. denied*, 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981). Judicial review of the trustees' interpretation of benefit plan documents is similarly restricted to the arbitrary and capricious standard. Where a provision in an employee benefits plan is susceptible of differing interpretations, the trustees' "interpretation should be upheld even if the court disagrees with it, so long as the interpretation is rationally related to a valid plan purpose and not contrary to the plain language of the plan." *Gaines*, 753 F.2d at 289.

Our court of appeals recently emphasized the degree of deference accorded to trustees' application of benefit plan eligibility requirements. *District 2, United Mine Workers of America v. Helen Mining Company*, 762 F.2d 1155 (3d Cir.1985). In *Helen Mining Company*, the court held that the trustees of an employee benefit plan did not act arbitrarily and capriciously in denying a claim related to surgery for which the claimant had not sought or obtained prior approval. The court rejected the claimant's argument that the trustees should not be permitted to rely on the plan's prior approval rule where the medical necessity of the surgery was admitted. The court held that:

> When the trustees have consistently and literally followed an unambiguous benefit eligibility requirement that was bargained for and that was set forth in an employee benefit plan, that action cannot be called arbitrary and capricious by a court unless enforcement would violate federal law or policy.

762 F.2d at 1160. The court of appeals based its decision on *United Mine Workers of America Health and Retirement Funds v. Robinson*, 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982), which the court interpreted to preclude judicial review of the reasonableness of trustees' enforcement of collectively bargained benefit plan eligibility requirements.

In the case at bar, plaintiffs' formidable burden is increased by the fact that the trustees rested their denial of benefits on alternative grounds. The trustees concluded that Gregory did not meet the plan's disability requirement, but that even if he did, Gregory had failed to submit proof of his condition within the period required by the plan. For plaintiffs to prevail, they must show that the trustees' decision cannot stand on either ground.

Plaintiffs contend that the trustees' decision is arbitrary and capricious primarily because: (1) the trustees failed properly to consider the Social Security Administration's award of disability benefits, (2) the trustees failed to consider adequately the waiver of premiums by Gregory's life insurance carrier, and (3) the Fund failed to follow its own rules and regulations by interpreting the plan to require proof of total and permanent disability within one year after the accident as opposed to one

year after the final employer contribution to the Fund on Gregory's behalf. The Fund responds that both the trustees' assessment of Gregory's medical condition and their interpretation of the plan's eligibility requirements are supported by the information presented to the trustees.

■ After careful consideration of the record, I conclude that the trustees' denial of death benefits because of Gregory's failure to provide timely proof of total and permanent disability is not arbitrary and capricious. I therefore find it unnecessary to decide whether the trustees acted arbitrarily and capriciously in holding the record insufficient to establish total and permanent disability.

As noted above, it is undisputed that Gregory failed to establish total and permanent disability with the Fund within one year of his accident. In denying plaintiffs' claim for the death benefit, the trustees interpreted the relevant provision of the health and welfare plan to require such proof within one year of the onset of disability. The plan states:

*Total and Permanent Disability*

If prior to age 60, you become totally and permanently disabled, your eligibility for the death benefit will continue on the following basis in twelve month increments. For continuation, proof of total and permanent disability must be presented *within the twelve month period of disability* and yearly thereafter to continue your coverage for the benefit.

I cannot say that the trustees' construction of the emphasized language is irrational; indeed it appears correct. Moreover, the trustees' interpretation serves the legitimate interest of compelling former employees to assert their claims at a time when the Fund can investigate the basis of an alleged disability.[3]

I am likewise satisfied that enforcement of the trustees' interpretation is not arbitrary and capricious on the facts of this case. While I recognize that it would be arbitrary and capricious to demand compliance with a benefit plan provision that did not fairly apprise the participant of his affirmative duty to establish eligibility, the provision at issue here, while imperfect, provided adequate warning.

Plaintiffs contend that the plan should be interpreted as permitting an employee to establish total and permanent disability within one year after the employer ceases forwarding contributions on a disabled employee's behalf.[4] This interpretation is not persuasive. The plan requires proof of disability to be made within, not after, the "twelve month period of disability." Even if I were in agreement with plaintiffs' reading of the plan, however, I could not reject the trustees' plausible decision to the contrary.

■ Apparently recognizing the strength of the Fund's position, plaintiffs argue that application of the plan's eligibility requirement is unfair, and that the requirement should not be strictly applied

**3.** Because the trustees reasonably decided that notice of total and permanent disability had to be given within one year after the onset of disability, Air Master Corporation's erroneous payments on Gregory's behalf from July, 1982 through September, 1982 did not affect the length of time during which Gregory could have established his condition. The Fund's payment of miscellaneous medical bills for Gregory in October, 1982 was similarly inconsequential. With respect to the Fund's payments, I note also that plaintiffs have failed to establish any basis from which a factfinder could conclude that the payments misled Gregory into believing that his death benefits eligibility requirement had been satisfied. Indeed, according to the trustees' interpretation of the plan, Gregory's ability to comply with the notice requirement had ceased

in August or September, 1982, before the Fund made any such payments.

**4.** Plaintiffs' argument on this point is confusing. Plaintiffs assert that Gregory received his last medical payment on June 30, 1982. Plaintiffs then "adopt" that date to "illustrate" Gregory's compliance with the plan's eligibility requirement. I see no reference in the record to a disability payment to the decedent on June 30, 1982. More importantly, even if the health and welfare plan provided for disability payments to injured employees during their period of disability, Gregory's receipt of such a payment on June 30, 1982 did not guarantee him an additional year to establish his disability as total and permanent.

where the Fund can demonstrate no prejudice from the former employee's failure to provide timely notice. This argument is similarly unpersuasive. In essence, plaintiffs invite me to review the reasonableness of the trustees' application of the plan's eligibility requirement. Although I acknowledge that the trustees' enforcement of the requirement in this case seems harsh, I cannot substitute my judgment for that of the trustees.[5]

In short, I conclude that the trustees' decision to deny plaintiffs' claim for death benefits because of Gregory's failure to comply with the plan's eligibility requirement is not arbitrary and capricious. I will therefore grant the Fund's motion for summary judgment.

---

**5.** Plaintiffs also argue that Gregory and John Tomczyscyn made persistent efforts before Gregory's death to obtain information about his eligibility for benefits. The impact of these arguments is unclear, but plaintiffs appear to be seeking to estop the Fund from relying on the plan's eligibility requirement. So construed, plaintiffs' argument cannot succeed. Although I recognize that the principle of estoppel is applicable in employee benefits cases, *Rosen v. Hotel and Restaurant Employees and Bartenders Union, supra,* plaintiffs have identified no statement or conduct of a Fund agent on which Gregory could have reasonably relied to his detriment. Indeed, the deposition of John Tomczyscyn establishes that Gregory received his benefits book at least as early as June 14, 1982, some seven months before Gregory's death. Despite the benefit book's explanation of the plan's eligibility requirement, Gregory did not seek to establish total and permanent disability before his death.